PHILIP SCHAEDEL, guardian, appellant,

*v.*

HENRY REIBOLT, administrator, respondent.

Where appellant took into his own family an orphan, and educated and supported her until she was sixteen years old, when she went elsewhere to work, and received her own earnings for a time, but becoming sick she returned—*Held*, that appellant was entitled to recover from her estate the expenses of her last illness and funeral. *Aliter*, as to clothing and board furnished.

---

Appeal from decree of Essex orphans court.

*Mr. S. Morrow*, for appellant.

*Mr. E. Q. Keasbey*, for respondent.

THE ORDINARY.

The appellant, Philip Schaedel, and his wife, took the deceased ward, Augusta Reibolt, out of the Newark Orphan Asylum, where she had been placed for support at the hands of charity. She was then about seven years old. They appear to have taken her to bring up, and they seem to have reared and cared for her, not only up to the time when, at the age of about sixteen, she left their house to go out to service, but afterwards, whenever she returned to them, and during her long, last illness (which was

Schaedel v. Reibolt.

for many months), as tenderly as they would had she been their own child. She went to service of her own choice, and while at service regarded their house as her home, and returned to it from time to time accordingly. They swear that she received and kept for her own use all the wages which she earned. She learned the trade of dressmaking in Newark, while she lived with them. While she was living with them, and before she went out to service, she was entitled to some money from her grandfather's estate. That money was in the hands of Henry Sauerbier as her guardian, he having been duly appointed as such. While she was at service in Paterson, she became apprehensive lest she should lose her money through the insolvency of Sauerbier, and procured the appointment of Schaedel as her guardian, and he collected the money from Sauerbier. Early in the fall of 1877, she returned to Schaedel's house sick of pulmonary consumption, and stayed there until she died, on the 18th of March following. Schaedel provided for her well during her illness, and had her decently buried after death. He claims credit in his account of his guardianship for payments made for her in the changing of guardians, for money paid for collecting the money from Sauerbier, compensation for her board &c., including care and attendance and physician's bills in her illness, and for money paid for her funeral expenses, to an amount in the aggregate very considerably exceeding the money received by him for her as her guardian, and the interest thereon. Her administrator, her brother, excepted to all these credits, and they were all disallowed. He insists that Schaedel was bound to furnish the board, care and attendance, and medical aid for which he claims credit without compensation or re-imbursement therefor; and so, too, as to the expenses of her funeral, that he was bound to pay them, and that he has no claim against her estate on account of those matters, or any of them.

The proof is, as before stated, that the appellant and his wife did their whole duty towards Augusta, and cared for her as if she had been their own child, from the time when they took her from the orphan asylum until her death. They sent her, not only to the public school, but for three years, at Schaedel's expense, to a private school; and they not only

educated her in the ordinary branches, but employed teachers to instruct her in book-keeping and in music. She went to school till she was fourteen years old. For the last three years of the time she went to a private school. After she became fourteen years old, she, as before mentioned, learned the business of dress-making, but lived with them all the time, and they clothed her. She appears to have left their house of her own accord when she was about sixteen years old, to work for herself, and continued to work on her own account, at various places in the neighbor-hood of Newark, until early in the fall of 1877, when Mrs. Schaedel dissuaded her from going out any more, because of her failing health, and she thenceforward, until her death, which occurred in March, 1878, lived with them, but as before stated, was sick of consumption. The proof is that she kept her own wages, and spent them in clothes &c. Miss Cullman, indeed, swears that on one occasion she saw her pay $12 to the appel-lant's wife, which the witness says she had brought from a place in Broad street (she was at one time employed at service at Mr. Lockwood's house in that street), but this is positively denied by Mrs. Schaedel, and both she and her husband swear unqualifiedly that they never had any of her earnings. Her brother's testi-mony as to what he says Augusta told him on the subject is, of course, incompetent. Miss Cullman says Augusta began to be ill in August or September, 1877, but adds that she was fre-quently sick before that time and had a doctor. It appears quite clear that the *quasi* parental relation which before then had existed between Augusta and Schaedel terminated when she, of her own accord, went out to work for herself, and the fact that she regarded his house as her home, and returned to it as such in the intervals of employment, would not affect that conclusion. For the time that she was a member of his family previously, he could have no claim against her for necessaries furnished to her, nor she any against him for her services rendered in the family. *Haggerty* v. *McCanna, 10 C. E. Gr. 48.* And so, too, to a certain extent with regard to the same matters when she returned from time to time to his house as her house. It appears, it should be remarked, that she stayed at his house during such

intervals of employment for considerable periods, at one time all winter, and at another (in 1877) from April to August. Her board (and clothing, too, if he provided it on such visits or stays) he would be regarded as giving to her, in view of their relations, unless it was otherwise understood between them. But neither justice nor law required him, under the circumstances, to pay her physician's and nurse's bills during her long illness, which resulted in her death, and finally to bury her at his own expense ; and neither justice nor law forbids his being indemnified for those payments out of her estate, but, on the other hand, both require the contrary. The appellant should be allowed all his charges except that of $667.50 (made, he swears, by advice of counsel), under date of April 30th, 1876, which is for board and clothing of Augusta from October 1st, 1867, to April 30th, 1876, and the charge of $40 under date of July 15th, 1876, for her board and washing during her sickness from May 1st, 1876, to July 15th, 1876. The court below appears to have ordered him to pay out of his own pocket a counsel fee of $25 to the exceptant's counsel, and the costs of the trial of the exceptions, and the costs of settling the account. Those ought all to be paid out of the estate.

The decree of the orphans court will be reversed, and the account restated here in accordance with the views expressed in this opinion.